ADDISON,
January,
1829.

## WILLIAM WILSON vs. JOHN WILSON.

That *Case* is the proper action for the interruption of an *easement*. That *trespass* will lie for an injury to the soil, though the same act, that occasioned such injury, operate also as an impediment to the *easement*.

That a conveyance of land by *metes* and *bounds*, saying nothing about any *easement*, or right of way, though an established road across said land, may be a breach of some covenant in the deed, yet it cannot be construed to take away the right of the grantor, to use the right of way in common with other citizens.

That, in this case, the land conveyed does not extend under the road.

This was an action upon the *Case*, the writ containing three counts. The first and third counts, only, become material to be mentioned. The first count charges, that the defendant erected a flume, shortening a dam eight feet, and making it two feet higher than the dam, which operated to raise the water, so that it flowed around to the injury of the plaintiff's furnace.

The third count was as follows :

" And whereas, also, the said *William Wilson*, on the first day " of March, 1823, and long before, and ever since, was, and yet is, " possessed of a certain trip-hammer shop and scythe factory, " situate and being in *New-Haven* aforesaid, at the south end " of said dam across the lower falls of *New-Haven* river, so called, " and on said first day of March, 1823, and long before, and ever " since, the said *William* carried on, at said works, his trade and " business of scythe making and drawing iron, and then had, and still " of right ought to have, in common with the other proprietors on the " south side of said river, a right of way from the main road to his " said works on the south side of said river, over said bridge, on " said river, above said falls, for himself and his customers to pass " and repass, with their carriages and teams, as they had occasion ; " and during all that time, the said *William*, with other proprie- " tors on the south side of said river, at great expense maintained " and kept in repair, said bridge, for the purpose of enabling him- " self and customers to pass and repass thereon, with their carria- " ges and teams, to and from said works ; yet the said *John*, con- " triving unjustly to vex and injure the said plaintiff, and to de. " prive him of the use and benefit of said right of way, and to pre- " vent his carrying on his business of manufacturing scythes and " drawing iron, at said works, in so extensive and beneficial " a manner as he ought to have done, did, on the first day of March, " 1823, and on other days and times between that day and the " present, wrongfully, and unjustly, tear up, break down, cut " away, and remove, part of said bridge, and put obstructions on " the same, so that the same could not be passed ; whereby the " said *William*, during all that time, was deprived of the ben- " efit of said way, and said bridge, for himself and customers, " with their carriages and teams, to pass and repass to and from " said works : and was thereby prevented from carrying on said " trade and business of manufacturing scythes and drawing iron, at

ADDISON,
January,
1829.

Wilson
vs.
Wilson.

" said works, in so ample and beneficial a manner as he ought to " have done, and, otherwise, should have done."

The plaintiff had before sued the defendant for raising the same dam too high, to the injury of the plaintiff's water works, higher up the river, and had recovered judgment for his damages and costs ; that the whole dispute and matters of right were submitted to arbitrators, including said judgment, or rather treating said judgment as an undecided action—That the arbitrators awarded against the plaintiff in that action ; but, according to the terms of the submission, fixed a bolt in a rock, from which to measure, to ascertain the height, to which a dam might be erected, consistently with the rights of both parties upon the subject ; and awarded that the dam might be raised nine feet and nine inches above that bolt.

At the trial before the County Court the said award was read in evidence to the Jury on the first count, and the defendant then introduced evidence showing, that, after the making and publishing of said award, the defendant erected, upon said dam, an additional flume, by the side of the flume then standing, and which is still standing, and planked the head of the same flume something more than two feet above the top of said dam; which is not higher than was permitted by said award ; together with evidence tending to show, that the injury complained of, in the first count, was occasioned by said flume.

Upon this point, the counsel for the defendant requested the Court to charge the jury, that if the defendant's dam was not higher than the height given in the award, the defendant had a right to erect such flumes, upon the said dam, as were usual and proper ; and that, therefore, the erection of the flume complained of was not an unlawful act.

But the Court charged the jury, that the defendant had no right, by the erection of additional flumes, or otherwise, to raise the water higher than the dam, at the height fixed by the arbitrators, would have raised it : and that, if he did so, and the plaintiff was damnified thereby, the plaintiff was entitled to recover.

In support of the third count in the plaintiff's declaration, he offered evidence tending to show, that, since the year 1805, the bridge mentioned in his declaration had stood over the stream in question, until about the first of March, 1823 ; when the same, being ruinous, was thrown down by plaintiff and others ; which bridge was never a public bridge, but had been maintained by the plaintiff and some others, residing on the west side of the river, for their private benefit : That in March, 1823, the said bridge was thrown down as aforesaid, and had never been rebuilt until Oct.

Addison,
January,
1829.

Wilson
vs.
Wilson.

1825—That after the bridge was thrown down in 1823, there remained the old logs, which had constituted the abutment on the east side, and which lay either on, or adjoining, the lands of the defendant; and that the defendant, some time in the year 1824, removed them, and threw them into the river.

To this evidence the defendant objected, and insisted that, as the way was not then in use, nor the main part of said bridge standing, the plaintiff was not entitled to recover, in this form of action.—But the Court overruled the objection, and charged the jury that, if the timber in question had constituted a part of the old way, and was suitable to be used in repairing or reconstructing the same, and had not been taken away, or devoted to any other purpose, and the plaintiff had not abandoned the way, altho' the bridge might not at the time have been in use, the plaintiff was entitled to recover.

The defendant then offered in evidence a contract between *Aaron Haskins* and others, dated on the 8th day of April 1805, respecting the highway, adjoining said bridge—a deed from said *Haskins* to the plaintiff, dated August 3d, 1812 ; and a deed from the plaintiff to the defendant, dated May 25th, 1808 ; which deeds and contract were made a part of the case, as well as the plan of the premises given in evidence by the plaintiff on the trial of the case ; and also evidence tending to show, that the east end of said bridge was about 70 feet from the east bank of said river—the bridge being supported by tressels over the said seventy feet of land ; and contended that, by the said deed from the plaintiff to the defendant, the plaintiff had extinguished his right of way, if any such previously existed.

But the Court decided, and so instructed the jury, that the plaintiff did not by said deed extinguish his said right of way, but that if the jury found that the plaintiff had used the said way, from the year 1805, for 15 years, it was sufficient evidence of his right. The defendant then introduced evidence, shewing that after the bridge was pulled down, as aforesaid, the plaintiff and another, who was also interested in said bridge, had divided the materials of the bridge, except such as lay on the east bank, and taken away their several portions to their respective houses, and that they had taken up and piled the principal part, if not all, the remains of the abutment on the east bank, and laid the same in piles on each side ; and contended, that under those circumstances, the plaintiff was not entitled to recover upon his third count. —But the Court overruled the objection and charged the jury as aforesaid.

The plaintiff also offered evidence, showing that, some time in

ADDISON,
January,
1829.

Wilson
*vs.*
Wilson.

the year 1824, the plaintiff, and others constructed, with some of the timbers of the old bridge, a floating bridge for passing on foot, by fastening the timbers together and to the bank—and also testimony tending to show, that the east end of the same was cut loose by the defendant. To this evidence the defendant objected, on the ground, that an injury to this foot bridge was not proper to be given in evidence under his declaration.—The Court overruled the objection, and also charged the jury, that the plaintiff might recover, in this suit, for an injury done to the foot, or floating bridge, provided it appeared that the floating bridge was erected for the temporary enjoyment of the same right of way, and was substantially in the same place ; although the abruptness of the bank, and the remains of the old bridge, might have rendered it necessary to vary a little the place of landing or going on to the bank.

The defendant filed exceptions to these several decisions of the County Court, on which the cause was removed to this court on a motion for a new trial.

*Argument of Mr. Phelps on the part of the defendant.*—As to the *first* point excepted to in the charge of the Court, the defendant insists,—That, as the award is altogether silent as to the flumes upon the dam, the defendant was not restricted by it in that respect—That it must have been the understanding of the arbitrators, and of the parties, that the defendant should be at liberty to erect necessary and proper flumes upon the dam, and that such is the legal construction of the instrument—The dam is useless without flumes ; and the award, relating only to the length of the dam, leaves the subject of the flumes untouched.

As to the *second* point, the defendant insists that for removing the remains of the old bridge, *Trespass*, and not *Case*, is the proper remedy.—The third count, under which this evidence was offered, declares for an obstruction to the defendant's right of way.—Nothing, therefore, is pertinent, under this count, except what goes to show a disturbance of the plaintiff in the enjoyment of the *easement.*—Had the bridge been standing, and in a condition to be used, the destruction or removal of it would have been proper evidence.—But, as it was demolished, not used, nor in a condition to be used, it is difficult to conceive, how any intermeddling with the fragments of it could be a disturbance of the *easement.*—But, at all events, after the evidence offered by the defendant of the destruction of the bridge by the owners, and the division of the materials, and the actual removal of the materials, they were no longer to be considered as a part of the way, but as mere personal chattels.—The plaintiff had *himself* demolished the way ; and,

ADDISON,
January,
1829.

Wilson
vs.
Wilson.

although the materials of which it had been composed were his property, yet no after removal of them by the defendant could be an interruption of the *easement.*—The Court at the trial appear to have misapprehended the objection.—It was not that the right was abandoned by the plaintiff, but that the act done, by the defendant, was not a disturbance of that right.

On the *third* point, it is contended, that the deed from the plaintiff to the defendant covers the land between the shore and the east end of the old bridge; and that this deed, not containing any exception or reservation of the right of way, the right was extinguished.—The enjoyment, after the date of the deed, up to the time when the bridge was demolished, was not for sufficient length of time to afford evidence of the right.

*Argument of Mr. Bates, for the plaintiff.*—Previous to the award there had been disputes about this dam's being too high. There were dams above; and William Wilson, owned some interest there. The raising this dam by the defendant injured the plaintiff's use of works above, and his interest at the lower dam. The action, then submitted, claimed damages for injuries to both. This action in the first count is for the injury at the lower dam. After the height of the dam was fixed by the arbitrators, for any purpose, plaintiff might purchase and erect upon the faith of it. By the deed of *William* to *John*, each had a right to half the water. After this is settled, defendant raises a flume inward, towards the stream, higher than the dam. The defendant requests the Court to charge about erecting suitable flumes, &c. It was a breach of the award, or injury to plaintiff's rights, to erect such a flume as to raise water higher than the dam allowed by the award. This request is vague and improper. The sole question, on this part of the case, is whether this flume occasioned an injury to the plantiff? By the request to charge, we must understand the charge. The judge charged that the defendant could not, by erecting flumes or otherwise, raise the water above the height contemplated by the award.

As to the 3d count, or bridge and interruption of way : The bridge was thrown down in March, 1823, and not rebuilt till Oct. 1825. But in 1824, the foot bridge was erected, and defendant cut away the east end.—[He read the charge upon this point.] It seems that plaintiff had acquired a right to this way, by use from 1805 to 1823. They erected a temporary bridge, and afterwards, with the materials, a permanent bridge. The defendant took away some of the materials that might have been used in rebuilding. I cannot anticipate Mr. *Phelp's* argument. To us it appears, that when a bridge goes down, the materials may be used

ADDISON,
January,
1829.

Wilson
vs.
Wilson.

in rebuilding. By defendant's doctrine, if a string piece falls, the bridge is gone. We conceive the right remains in plaintiff, to have the way and bridge as before it failed.

As it respects the deed from *William Wilson* to *John*, it is manifest it does not convey any part of the way in dispute. Whether the land by the town highway extended to the bank of the river, or only to the east end of the bridge, it is certain that, at the time the deed was given, there was in fact a highway to and across the river, of which *William* and others were then in the use and enjoyment; and the description of one boundary line, in the deed, is as follows: " thence westerly on *said highway* to the middle of said river." From which it is evident the parties considered it a highway.

By the expression, "all the lands northerly of the ledge," the parties meant the lands between the ledge and said highway. The land to the highway on the north side had been described in the deed before. The object of this description was, the lands on the south side of the highway; and the phrase " northerly of the ledge" was used because the ledge was the southern boundary. If we give to this phrase the effect of conveying the road, we must also admit, that it would as well convey the lands north of it, indeed, all the lands north of the ledge in the town of *New Haven*; and in this case, the description set forth in the deed of the lands north of the highway was altogether useless ; for in point of fact, they also are north of the ledge.

Upon the whole, it is manifest from the deed, that the parties intended it should include the land on the north and south side of the road, but not the road itself.

HUTCHINSON, J. delivered the opinion of the Court. There appears no connection, either in fact or in principle, between the subject matter of the first and third counts of the plaintiff's declaration. The question raised, in connection with the subject of the first count, is presented by the exception taken to the charge of the Court.

It appears, from the case and writings therein referred to, that the plaintiff, in 1802, derived, from *Aaron Haskins* and others, all the title he and the defendant both now have, at the place of the dam and flume in question ; that he had a right to erect a dam, so as to raise the water ten feet above its natural height, at common low water—That, in 1808, the plaintiff conveyed to the defendant the right of erecting such dam, and taking and using one half of the water—That the plaintiff, also becoming owner of works farther up the river, in 1815, a dispute arose between him and the defendant about the height of the defendant's dam, and the

K

ADDISON,
January,
1829.

Wilson
vs.
Wilson.

same was settled by the award of arbitrators, and a monument placed in the rock to prevent all future uncertainty about the height to which a dam might be erected—That the plaintiff, before this suit was brought, had erected a furnace at the end of this dam, where he had none erected before, and, it is understood, on premises not owned by him when the award was made ; and that the defendant's new flume, planked up two feet higher than the dam, occupied eight feet of the space where the water before passed over the dam.   The water had arisen, and done an injury to the plaintiff's furnace.

Upon this point, the Court instructed the jury, that the defendant had no right, by the erection of additional flumes, or otherwise, to raise the water higher than the dam, at the height fixed by the arbitrators, would have arised it ; and that if he did so, and the plaintiff was damnified thereby, he was entitled to recover his damage thus sustained.

Though this arbitrament and award might have, and probably had, reference to the plaintiff's complaints of injury to his works above, from the great height to which the defendant had raised the water by his dam ; yet it settled the height of the dam, in reference to the rights of the plaintiff and defendant, under the lease *Haskins* and others to the plaintiff, and his deed to the defendant. That question was so settled, that the plaintiff must bear whatever injury was done to his works above, if any such existed ; and he might well act upon the faith of this, in new erections and purchases connected with it.   If the defendant had no right to raise the dam above a certain height, and he did so raise it, to the injury of the plaintiff's rights that existed at the time of the award, or that he had acquired since that time, in either case, the plaintiff would be entitled to damage for such injury.   It seems, that the defendant's new flume occupied eight feet of what before was dam ; and it was two feet higher than the dam.   Of course, it must have formed an obstruction to the water passing over the dam, eight feet long and two feet high.   This might occasion a greater height of water in the pond, and a heavier current where it passed over the dam, than if this obstruction were not there.   Whether it did so or not, was a proper question to the jury, and, we think, was properly submitted to them in the charge.

In the third count, the plaintiff complains of obstructions to, and taking away part of a bridge, leading from the plaintiff's shop and factory, over the river to the main road.

It appears, by the writing referred to, of April 8th, 1805, that *Aaron Haskins* and others, of whom the plaintiff was one, then appropriated a piece of land, about two and a half rods wide, and

ADDISON.
January,
1829.

Wilson
vs.
Wilson.

extending from the east end of the great bridge across said river, north-eastwardly, to the road that runs north and south, for a road, and agreed that this road, so established by agreement, should be kept open, as free and clear to the public forever. This writing was recorded in the town records. The plaintiff, when he conveyed half of the water to the defendant, conveyed a piece of land lying north of this road, and bounded upon its north line; also a piece by this description, " all the land northerly of a ledge, running from the river to the highway above mentioned, (that is the highway runing north and south) with a shop thereon standing, containing about ten rods of land."

The defendant objected to the plaintiff's testimony to prove this third count, and to prove the injury complained of; but the same was admitted. The objection to this evidence, and to the charge of the Court upon it, goes wholly to the form of the action; the defendant contending that it would support trespass and not case.

The Court, however, consider that, while the plaintiff complains of the interruption of an easement merely, he must declare in case. If he complains of an injury to his right of soil in the highway, he may declare in trespass; though the same act that occasioned the injury impede the use of the easement. Here the plaintiff complains of nothing but the interruption of his easement; and, upon this declaration, could recover for nothing else.

Again, the defendant contends that the plaintiff's deed to him covers the land in question, conveying to him all the right the plaintiff would otherwise have. This leads to a construction of the last clause in the descriptive part of said deed. What is meant by " all the land north of the ledge ?" It cannot mean all there is in the world north of the ledge. Several things concur to show what was intended. 1st. The quantity. The deed says about ten rods of land. The testimony is, that the whole between the ledge and said cross road is about twelve and three fourths rods of land. 2d. The shop mentioned in the deed stands on this piece, but south of said cross road. 3d. The same deed, by another description, conveys to the defendant the land next north of this cross road. These two separate descriptions could have no possible object, but to exclude the land over which this cross road passed. 4th. Said deed is a warranty deed, and neither party seems ever to have supposed that cross road to be an incumbrance to affect the covenants. Yet such it would be, if the land under such road had been conveyed. This serves to show how the parties have understood the deed, for more than twenty years.

We think this deed does not cover the land under said cross

Addison,
January,
1829.

Wilson
vs.
Wilson.

road. But if it did convey the land, we discover no ground upon which the plaintiff's right to the easement can be affected by it. The plaintiff could give no conveyance that would prevent this cross road from being a public road. He joined with others in making it such, so long ago as the year 1805. Such it must remain till altered by something more than any deed from one of the original owners. But there is no description in this deed that can be construed into an intention to convey any easement or right of way. What is conveyed is clearly certain lands, and half of the water at the dam. The Court, therefore, correctly instructed the jury, that, if the plaintiff had used this right of way for more than fifteen years, it was sufficient evidence of his right; and that such right was not extinguished by the plaintiff's deed to the defendant.

Neither would this be rendered otherwise by the work of the plaintiff, and others interested, in piling up the remains of the old bridge, and carrying their portions to their respective houses. This could be nothing more favorable to the defendant, than evidence of abandoning the highway as such; and that was comprised in the charge about the plaintiff's having used this easement for fifteen years. Furthermore, it was no more evidence of an abandonment, than it was of clearing away the rubbish preparatory to the erection of a new bridge. And it seems a new bridge was actually erected in the fall of 1825.

With regard to the admission of the testimony about the foot bridge, and its being cut away by the defendant; this testimony was properly admitted, if it tended to show what seems supposed by the charge of the Court; that is, if it tended to show that this was a temporary bridge, erected for the purpose of enjoying the same easement, while a better bridge should be erected. A recurrence to the third count of the declaration shows that the variance urged in argument does not exist. The charge in the declaration is, that the defendant wrongfully, &c. did tear up, break down, cut away, and remove, part of said bridge, and put obstructions on the same. It no where gives any such description of the bridge as to designate it a foot bridge, or any other bridge in particular. The *gravamen* is the impediment to the easement, by the cutting away, &c. the bridge, upon which the plaintiff and others crossed the river to the main road, in the enjoyment of that easement.

Upon the whole, the judgment of the County Court is affirmed.

*Mr. Bates,* for the plaintiff.

*Mr. Phelps,* for the defendant.